ALLEN, Acting Chief Judge.
The petitioner, Frank J. Florik, initiated the above styled proceedings by filing a pe *42 tition or suggestion for the review of an order of the Florida Land Sales Board as a derivative action on behalf of Gulf American Corporation, a Florida corporation, and on behalf of himself and all other persons similarly situated, to review an order of the Florida Land Sales Board. He sought a writ of prohibition or injunction in connection with this review directed to the said Board quashing the order entered by the Board on the 10th day of November, 1967.
This court issued an order on December 8, 1967, commanding the members of the said Board, and its executive director, to show cause before this court on the 19th day of December at 2 P.M. why the said petition should not be granted as prayed.
Due to the gravity of the situation and the immensity of the damage that could be done to the corporation and the stockholders of the Gulf American Corporation, we notified the attorneys for all parties to file briefs in the matter and that we would hear all parties at this final hearing on December 19, 1967, which hearing took place as above stated.
We note from an Associated Press dispatch that the chairman of the board of Gulf American Corporation stated that this corporation in the past year has sold some $131.3 million dollars of property and in the previous year sold some $143.8 million dollars in property. He also stated that the total assets of the corporation arose to $351.5 million with a book value of $9.97 a share in the fiscal year. We also note the chairman’s statement that the corporation is alleged to be in the most solid financial condition.
In addition to the petitioner-stockholder, who alleges to own some $50,000 of investment in the corporate structure of Gulf American Corporation, numerous other stockholders were interested in the financial stability of this giant land company.
The petition or suggestion under review alleged in Paragraph III that the Gulf American Corporation has outstanding as of August 31, 1967, 9,664,004 shares of common stock and its stock is traded upon the American Stock Exchange; that the petitioner, Frank J. Florik, is the owner of 118,600 shares of the common stock of the corporation; and that the stock has a present value in excess of $50,000.
Paragraph IV of the petition alleges the creation of the Florida Land Sales Board by virtue of Chapter 67-229, Fla.Stats., and that this act became effective August 1, 1967. That act supplanted the “Florida installment land sales law,” which was dissolved as of the 1st day of August, 1967, upon the effective date of the new act.
Paragraph V states that on the 13th day of October, 1967, the Florida Land Sales Board issued a Rule to Show Cause, directed to the respondent corporation and the officers and directors of said corporation, alleging in effect:
(1) certain violations of the provisions of § 478.041, Fla.Stats., the Florida Installment Land Sales law, which was supplanted and superseded by the Florida Uniform Land Sales Practices law.
The petition alleged that no right or power was reserved or conferred upon the new Board to enforce the terms and provisions of the old act and that it was without jurisdictional power to proceed with the trial of the respondent corporation under the charges filed October 13, 1967, for alleged violations occurring under the old act.
Paragraph VII alleges that the new Board proceeded to hear and try the respondent corporation for acts which had occurred prior to the existence of the new Board.
Paragraph VIII states that the corporation, by an order rendered by the new Board on November 10, 1967, was suspended as a registrant under the Florida Land Sales Board for a period of 30 days.
The said paragraph further alleged that the new Board appointed five persons, namely: Stewart D. Allen, Don Reed, *43 Charles Crumley, Dermott Noonan and William B. Davis, as Monitors and authorized them to supervise the operation of the respondent corporation’s business for a period of 150 days.
Paragraph VIII further states:
“Hs * * No power is granted to the said Board or to any Board to make the said appointment or to authorize said persons to act or to vest them with the power and authority indicated by said Order. The petitioner avers that he has been advised that the sum of $150,000 will be assessed and required of the respondent corporation to pay for the services of said five Monitors. The appointment of these persons and the authorization of said persons to supervise the corporation or its affairs, and in imposing the duty upon them of observing and recommending to the Board corrective measures as the said Monitors may consider proper for the correction of the alleged violations under the old law, was without jurisdictional power or authority of said Board so to do and said appointment and said Order is a nullity, and each, all and every of the provisions of said Order are rendered without authority of law and are void.”
We pause here to remark that these are the allegations of the petition, and for the benefit of the Monitors who have been named in this proceeding, we do not assert ourselves that such is a fact.
Paragraph IX sets forth that the effect of said order on the business of the respondent corporation is disastrous; that it disrupts the entire sales force of said corporation; and that the said corporation has monthly sales of its property of approximately $10 million.
It is further alleged that the complete disruption of its business by the said order of suspension and by the appointment of said five persons to oversee the operation of said corporation, will cause the corporation irreparable injury and damage and will greatly depreciate the value of the petitioner's stock holdings in said corporation as well as the stock holdings of all other persons similarly situated.
Paragraph X of the petition states that at the time of the hearing before the Board on November 10, 1967, which occurred in Tampa, Florida, the officers and directors of the respondent corporation refused to defend said action and attempted ultra vires to consent to the rendition of said order and to the conferring of jurisdiction of said Board for the rendition thereof. The petition asserted that this conduct failed to protect the rights of the corporation and its stockholders.
Paragraph XI alleges that the order of suspension would become effective on Monday, December 11, 1967, and that the officers and directors of the corporation had made no effort to appeal from said order.
Paragraph XII sets forth that under specific terms of the new Act, the Board is deprived of the power to proceed against any person for any matter or thing which occurred prior to August 1, 1967. That act specifically provides:
“This act does not apply to any offense committed prior to the effective date of this act, and any such offense is punishable as provided by the statute in force at the time such offense was committed.”
The petitioner prayed that this court:
“(a) Quash the Order dated November 10, 1967 of the Florida Land Sales Board;
“(b) Issue its Rule Nisi in prohibition directed to said Board and upon a return thereof and a hearing thereon, make said Rule absolute;
“(c) Grant such injunctive relief and constitutional writs as will suspend the operation of said Order until the merits of this cause may be heard.”
The respondent, Florida Land Sales Board, a State Board, and the individuals who constituted the Board, Carl A. Bertoch, the Executive Director of said Board, and the Monitors appointed by the Florida Land *44 Sales Board, made a return to the rule to show cause issued on December 11, 1967.
In Paragraph 4, the respondents alleged that they were entitled to and did try the respondent corporation under the provisions of the former Act, to-wit: Chapter 478, Florida Statutes, F.S.A. They alleged that they had a right and duty, in view of the complaints lodged with said Board for infractions and violations of the provisions of the old law and they deny that the old law was repealed, superseded and supplanted by the new law to the extent that it prevented prosecution.
In Paragraph 9, in answer to Paragraph X of the suggestion, the respondents admit that a hearing was held in Tampa, Hillsbor-ough County, Florida, before the respondent Board on November 10, 1967, at which time there appeared the officers and directors, or some of them, of the respondent Gulf American Corporation; that at said time and place these officers announced, declared and consented to the entry of an order and a confession as to certain charges made against the said corporation, which said acts on the part of said officers and directors of the respondent Gulf American Corporation were not ultra vires, but in mitigation of the penalty that otherwise might have been visited upon the corporation for its admitted violations of the law; that the conduct of the Board of Directors and officers of the respondent corporation in admitting the violations of which said corporation was charged and the consent to a suspension of the registration of said corporation were in the best interests of the corporation, its stockholders and business for the reason that innumerable complaints, which could or would have been made the subject of further proceedings against the respondent corporation, had been brought to the attention of the respondent Board and could have and may have resulted in more severe penalties and actions against the respondent corporation; that this suggestion by the petitioner does not indicate, nor is it alleged, that the officers and directors of the respondent Gulf American Corporation, in admitting the charges and consenting to the order of November 10, 1967, acted in bad faith, nor has there been alleged the reason for their refusal to prosecute an appeal or review of the order of November 10, 1967; and that the failure to allege the reasons, if any, for the refusal, justifies the inference that the refusal was based on the grounds of discretion or policy. A copy of the proceedings before the respondent Board on November 10, 1967, was attached to the Rule as Exhibit A.
In Paragraph 10, in answer to Paragraph XI of the suggestion, these respondents admit that the order of suspension became effective on December 11, 1967, and that to the knowledge of these respondents, no effort was made by officers and directors of the respondent Gulf American Corporation to seek a determination or review of the order of November 10, 1967.
The answer further states that innumerable complaints have been received by this Board and its predecessor Board from persons throughout the United States complaining of the activities and conduct of the respondent Gulf American Corporation and that an investigation originally begun by the old Board was continued by the new Board for alleged violations occurring under the old Act; that the present respondent Board has received in excess of 3,000 complaints from persons who contend that the activities and practices of the respondent Gulf American Corporation are in violation of Chapter 478 or its successor, Chapter 67-229, and that this Board considered that it had a duty and obligation to the public to take remedial measures to correct the practices and violations indulged in by the respondent corporation.
The Gulf American Corporation filed an answer to the petition or suggestion for review of an order of the Florida Land Sales Board.
Paragraph 8 of this answer states as to Paragraph X of the petition, that Gulf American Corporation says that at the time of the entry of the order under review and *45 on November 10, 1967, this respondent and its officers and agents did not consider the legality of the proposed action of the Board and whether or not the corporation acted ultra vires to be determining factors in consenting to the entry of the order under review. It says that in consenting thereto it attempted to do that which appeared to be best for the business of the corporation; that its officers and agents had been informed and believed that serious punitive action was intended to be taken against the respondent by the Board and that believing that a consent of the action proposed by the Board would be better in the long run for the respondent than to engage in long, time consuming and expensive litigation with the Board. This respondent consented to the entry of the order.
In Paragraph 9 of the answer the Gulf American Corporation admits that no effort had been made by its officers and directors to seek a determination of the validity of said order. It recognized that there were serious questions as to the legality of said order, but it considered itself honor bound to observe its commitments in spite of such objections, being activated in respect to its position thereto by reason of the preceding paragraphs of the answer.
In conclusion, the Gulf American Corporation prayed as follows :
“(a) That upon a full consideration of the cause, the Court enter such order as to it seems in accordance with justice and law.”
The answer was sworn to by the Chairman of the Board of Directors of Gulf American Corporation, Leonard Rosen.
The minority stockholder, Frank J. Flo-rik, who instituted this action in this court, was concerned with the failure of the Gulf American Corporation to appeal or to fight the order of suspension instead of confessing and agreeing to the order. And particularly disturbing is the following order of the Florida Land Sales Board:
“IT IS FURTHER ORDERED that this Board shall appoint and designate up to five (5) persons who shall be known as Monitors, who shall serve in such place or places as the Board may select to aid the Respondent in correcting any of its past or present practices in order to conform with the law and the rules and the regulations of the Florida Land Sales Board, it being understood that such Monitors shall have the duty of observing and recommending such corrective measures as they or each of them considers proper. Such recommendations shall be made in writing to the Respondent and to the Board. Such Monitors shall be paid reasonable and fair fees established by this Board and paid for by Respondent, and shall serve for a period of one hundred fifty (150) days from the date of this Order.”
This court is also concerned with the above provision, as we find no authority in the Florida Land Sales Board to select monitors to oversee the operation of this private corporation to see that it is complying with the orders of the Florida Land Sales Board.
If a regulatory board has the implied power to appoint so-called monitors to see that a private corporation is complying with the law and to tap the finances of this private corporation to pay for such services instead of using an appropriation of the legislature for this purpose, we believe that a dangerous situation would exist. If the Florida Land Sales Board has such implied power, probably all the other regulatory bodies in the State would have a similar implied authority.
This court, however, is faced with its power to take jurisdiction in this case.
No appeal or other appellate review was sought by the corporation since it had, in effect, consented to the order that was entered by the Florida Land Sales Board.
This suit was instituted, as we have heretofore stated, by a minority stockholder *46 on behalf of the corporation seeking, in effect, an equitable determination by this court of an action which a stockholder could bring in an equity court to determine whether or not the officers of the corporation were acting illegally in agreeing and pleading guilty, in effect, to the order of the Florida Land Sales Board. The parties’ briefs filed in this case do not furnish us a single adjudicated case which holds that we can act as a court of equity and determine the issue presented in a derivative stockholder suit. In a very old case, that of the State of Florida et al. v. Florida Central R. R. Co. et al. (1876), 15 Fla. 690, 725-726, appears the following:
“We next consider the appeal of Edward M. L’Engle. He claims to ‘represent and stand in the place of the Jacksonville, Pensacola and Mobile Railroad Company’ for the purposes of this appeal, being a stockholder therein. This cannot be. The corporation is an artificial thing representing the whole body of the stockholders, and no one stockholder can prosecute an appeal from a judgment against the corporation. He can no more do so than could A prosecute an appeal against B. The same rule applies which prohibits an individual stockholder from appealing or answering in the corporate name. In such case the corporation would not be before the court. No decree rendered against it would be binding. ([Bronson v. LaCross Railroad Company,] 2 Wall. 302, [17 L.Ed. 725.]) If such is the right of one, it is the right of all, and each might set up á separate and inconsistent defense, and in any suit against a corporation we would have a half dozen inconsistent answers representing the same interest. (Citations omitted)'
“This stockholder having no right to appeal for the company, that corporation is not before this court, nor can the judgment against it be reviewed on this appeal.”
In 19 Am.Jur.2d, Corporations, § 528, page 63, under the subject “Nature and Elements of Derivative Action,” it is stated:
“Whenever a corporation, either actually or virtually, refuses to institute or prosecute a right of action accruing to it, then, in order to prevent a failure of justice, equity will permit a suit to be brought and maintained by a stockholder or stockholders, substituting them to the corporation’s right of action. The right of a stockholder to maintain a derivative action is of an equitable nature and, in the absence of a statute to the contrary, is recognizable only in equity. It is necessary, in order to invoke the jurisdiction of equity, that a case be presented which entitles the plaintiff to equitable relief under some general head of chancery jurisdiction ; it must appear that there is no adequate remedy at law.”
In 18 C.J.S., § 567 Corporations p. 1288, appears the following:
“A suit by a stockholder on behalf of the corporation must be brought in equity. The suit is for the benefit of the corporation and all stockholders, and the real controversy is between the corporation and the person whose acts are complained of, the corporation being the beneficial plaintiff. In case of a judgment fraudulently obtained against the corporation, by default or confession, a stockholder’s remedy usually is by motion to vacate the judgment and for permission to defend for the corporation.”
If this court could entertain appellate jurisdiction or original jurisdiction in this stockholder’s action, we could be faced with actions by other stockholders for the same kind as various stockholders might see differently from each other in whether or not the actions of the officers of the corporation were proper.
In the situation existing here we must and do dismiss the action filed by Frank J. Florik for and on behalf of the Gulf American Corporation, a Florida corporation, and as a stockholder and on behalf of all other persons similarly situated.
PIERCE and HOBSON, JJ., concur.